SEMNAR & HARTMAN, LLP
Babak Semnar (SBN 224890)
bob@sandiegoconsumerattorneys.com
Jared M. Hartman, Esq. (SBN 254860)
jared@sandiegoconsumerattorneys.com
400 South Melrose Drive, Suite 209
Vista, CA 92081
Ph: (951) 293-4187
Fax: (888) 819-8230

Attorneys for Plaintiffs
PATRICK MUSANTE, HAZEL MUSANTE

## U.S. DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK MUSANTE, an individual, and HAZEL MUSANTE, and individual,<br><br>    Plaintiffs,<br><br>    vs.<br><br>WILSHIRE COMMERCIAL CAPITAL, LLC (dba WILSHIRE CONSUMER CREDIT); and DOES 1-10,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br>   1. **CALIFORNIA ROSENTHAL ACT,**<br>   2. **TELEPHONE CONSUMER PROTECTION ACT** |

TO THE CLERK OF THE COURT, ALL PARTIES, AND THE HONORABLE U.S. DISTRICT COURT JUDGE:

Plaintiffs, individuals, by and through their attorneys of record, BABAK SEMNAR and JARED M. HARTMAN of SEMNAR & HARTMAN, LLP, hereby complain and allege as follows:

## INTRODUCTION

1. Plaintiffs, through their attorneys, bring this action to challenge the actions

1
**Complaint for Damages**

1  of Defendant WILSHIRE COMMERICAL CAPITAL, LLC, dba WILSHIRE
2  CONSUMER CREDIT (hereinafter "WILSHIRE") for unlawful harassment in
3  connection with alleged debt collection activity, and for calling Plaintiffs multiple
4  times—after revocation of any alleged prior express consent—by utilizing an automatic
5  telephone dialing system (ATDS) and pre-recorded and artificial voice messages.

6  2. The Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA")
7  was designed to prevent calls like the ones described within this complaint, and to
8  protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about
9  abuses of telephone technology – for example, computerized calls dispatched to private
10 homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132
11 S. Ct. 740, 744 (2012).

12 3. In enacting the TCPA, Congress intended to give consumers a choice as to
13 how creditors and telemarketers may call them, and made specific findings that
14 "[t]echnologies that might allow consumers to avoid receiving such calls are not
15 universally available, are costly, are unlikely to be enforced, or place an inordinate
16 burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress
17 found that:

18 > [b]anning such *automated* or prerecorded telephone calls to
19 > the home, except when the receiving party consents to
> receiving the call or when such calls are necessary in an
> emergency situation affecting the health and safety of the
20 > consumer, is the only effective means of protecting telephone
> consumers from this nuisance and privacy invasion.

21

*Id.* at § 12 (emphasis added); *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

4. Congress also specifically found that "the evidence presented to the Congress indicates that *automated* or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Id. at §§ 12-13. *See also*, *Mims*, 132 S. Ct. at 744 (emphasis added.)

5. As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls similar to this one:

> The Telephone Consumer Protection Act … is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

6. Pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that an aggrieved Plaintiff provided prior express consent within the meaning of the statute. *FCC Declaratory Ruling*, 23 F.C.C.R. at 565.

7. In Calif. Civil Code § 1788.1(a)-(b), the California Legislature issued the following findings and purpose in creating the Rosenthal Fair Debt Collections Practices Act ("RFDCPA"):

3
**Complaint for Damages**

(a)(1) The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers.

 (2) There is need to ensure that debt collectors and debtors exercise their responsibilities to another with fairness and honesty and due regard for the rights of the other.

(b) It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts of practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title.

8. Plaintiff makes the allegations below on information and belief, with the exception of those allegations that pertain to Plaintiff's personal knowledge.

**JURISDICTION & VENUE**

9. This action partially arises out of Defendant's violations of the Telephone Consumer Protection Act (TCPA), over which the U.S. District Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (*Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012)); and the State of California RFDCPA, over which the U.S. District Court has supplemental jurisdiction 28 U.S.C. § 1367(a).

10. Defendant is physically located at 4727 Wilshire Blvd., Suite 100, City of Los Angeles, State of California, and regularly does business in the State of California by issuing lines of personal credit to residents therein and regularly contacting those residents in an attempt to collect upon the line of credit, and as such personal jurisdiction is established.

5. Because all tortious conduct occurred while Plaintiffs resided in the County of Riverside, and witnesses are located within those locations, venue properly lies in this court.

## PARTIES & DEFINITIONS

6. Plaintiff is a natural person.

7. Defendant CREDIT ONE regularly does business in the State of California by issuing lines of credit to California residents and regularly contacting residents therein in attempt to collect upon the lines of credit.

8. Plaintiff is a natural person, and is therefore a "person" as that term is defined by California Civil Code § 1788.2(g) of the Rosenthal Act.

9. Plaintiff is a "debtor" as that term is defined by California Civil Code § 1788.2(h) of the Rosenthal Act, as he is alleged to owe financial obligations to Defendant arising out of a line of personal credit issued to Plaintiff by Defendant for Plaintiff's use in his personal life.

10. The credit extended by Defendant to Plaintiff constitutes a "consumer credit transaction", as that term is defined by California Civil Code § 1788.2(e) of the Rosenthal Act, because finances were provided to Plaintiff's as a line of personal credit in exchange for him to re-pay Defendant the principal plus interest in the future.

11. Because Plaintiff, a natural person, was allegedly obligated to pay money to Defendant for a line of personal credit, the money allegedly owed was therefore both a "consumer debt" as that term is defined by California Civil Code § 1788.2(f) of the

1  Rosenthal Act and a "debt" as that term is defined by California Civil Code § 1788.2(d)
2  of the Rosenthal Act.

3      12.    Defendant, in the ordinary course of business, regularly, and on behalf of
4  themselves, engages in the practice of collecting "consumer debts", and thereby
5  engages in "debt collection" as that term is defined by California Civil Code section
6  1788.2(b) of the Rosenthal Act.

7      13.    Because Defendant engages in "debt collection", Defendant is therefore a
8  "debt collector" as that term is defined by California Civil Code section 1788.2(c) of
9  the Rosenthal Act.

10     14.    With regards to the TCPA cause of action, Plaintiff is, and at all times
11 mentioned herein was, a citizen and resident of the State of California, and therefore is
12 and was a "person" as defined by 47 U.S.C. § 153(39).

13     15.    Defendant, is and at all times mentioned herein was, a corporation and is a
14 "person," as defined by 47 U.S.C. § 153(39).

15 <center>**FACTUAL ALLEGATIONS**</center>

16     16.    At some point in October 2014, Plaintiff HAZEL entered into a personal
17 loan with Defendant that was co-signed by Plaintiff PATRICK.

18     17.    This loan was ultimately paid in full in May 2015.

19     18.    Plaintiff HAZEL is a 76-year old woman.

20     19.    After Plaintiff HAZEL missed her monthly payment to Defendant in
21 January 2015, Defendant began engaging in a barrage of unreasonable telephone calls

1  to her at all hours of the day, with many calls occurring before 8:00 a.m. and after 9:00
2  p.m.

3   20. Most of the calls placed to Plaintiff HAZEL resulted in her hearing a pre-recorded and artificial voice message informing her that the call was being placed to her by Defendant, which also means that Defendant's calls to Plaintiff HAZEL were placed with an automatic telephone dialing system ("ATDS").

7   21. An ATDS is equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and utilizes such equipment to dial such numbers, as defined in 47 U.S.C. § 227(a)(1)(A)-(B). Automatic telephone dialing systems place calls without human intervention until a connection is made with a person on the receiving end of the call, at which time the dialers attempt to connect the recipient with a live agent of the debt collector.

13   22. The calls to were not for emergency purposes, as they were intended solely for debt collection activity.

15   23. The calls were even placed to Plaintiff HAZEL during the contractual grace period within three days of her missed due date, during which time she was technically considered not to be in default on the monthly payment.

18   24. The calls were also placed to Plaintiff HAZEL in an unreasonable volume, as she would often receive at least three calls per day.

20   25. During many of the calls, Plaintiff HAZEL complained to the collection agent that they were calling her an unreasonable amount of times and at unreasonable

7
**Complaint for Damages**

hours, and the agents would always rebuff her complaint and claim that they could call at any time because she owed them money.

26. Even during times that she told them to stop calling, they would even call again the same day.

27. Defendant would also place calls to Plaintiff PATRICK's phone with pre-recorded and artificial voice messages and with an ATDS, and many times the calls placed to Plaintiff PATRICK were placed on the same day as the calls to Plaintiff HAZEL.

28. During one phone call in January 2015, Plaintiff PATRICK promised to make the payment the next day.

29. However, early in the morning on the next day, less than 24 hours after Plaintiff PATRICK's promise to pay, Plaintiff HAZEL received a call from Defendant and Defendant's agent lied to her claiming that Plaintiff PATRICK had never made any arrangements for payment and even claimed to her that Plaintiff PATRICK was lying to her.

30. In an effort to stop the harassing pattern of calls, Plaintiffs HAZEL and PATRICK drafted a letter dated January 14, 2015 to Defendant informing them that the harassing calls were causing significant medical distress to Plaintiff HAZEL and insisting that the calls to both of them stop, and further insisting that any further communication be done only in writing.

31. A certified mail return receipt shows that this letter was received by

Defendant on January 29, 2015.

32. This letter operates as a revocation of any consent to be called by Defendant, which became effective on receipt by Defendant January 29, 2015.

33. Unfortunately, however, Defendant's calls continued to persist.

34. In total, in the months of February 2015 to May 2015, after Plaintiffs' revocation of consent to be called by Defendant, Plaintiff HAZEL received at least 45 calls in violation of the TCPA and Plaintiff PATRICK received at least 25 calls in violation of the TCPA.

35. Plaintiff HAZEL is a Type 2 diabetic, and Defendant's aggressive and oppressive debt collection tactics and conduct in placing an unreasonable volume of unconsented-to phone calls has caused significant mental anguish and distress to in that she suffered detrimental medical conditions as a result of this harassment, such that the stress increased her blood pressure to levels that might typically require hospitalization, prevented her from sleeping, causing her fear and anxiety and depression and feelings of hopelessness and despair.

36. Plaintiff PATRICK also suffered mental anguish and distress in that he was constantly in fear for his mother's health as he was aware that the calls were causing such distress to her that her blood sugar levels were spiking to dangerous levels and she was not able to sleep or relax due to her fear, anxiety, and depression.

//

//

### FIRST CAUSE OF ACTION
### CALIF. ROSENTHAL ACT
### CALIF. CIV. CODE §§ 1788-1788.32

37. Plaintiffs repeat, re-allege, and incorporate by reference all other paragraphs, as if fully set forth herein.

38. By repeatedly calling Plaintiffs PATRICK and HAZEL despite his clear insistence that the calls stop and despite their clear advisement in January 2015 that the calls were causing risk to HAZEL's health issues, Defendant has engaged in unfair and unconscionable means in an attempt to collect a debt in violation of 15 U.S.C. § 1692f of the Federal FDCPA; and has engaged in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. § 1692d of the FDCPA. These violations of the FDCPA constitute violations of the RFDCPA as they have been incorporated therein by Calif. Civ. Code § 1788.17.

39. By lying to Plaintiff HAZEL when they claimed in January 2015 that Plaintiff PATRICK never made a promise to pay and actually turned around and accused Plaintiff PATRICK of lying to his own mother, Defendant engaged in false, deceptive, or misleading representation or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692e of the FDCPA; engaged in unfair and unconscionable means in an attempt to collect a debt in violation of 15 U.S.C. § 1692f of the Federal FDCPA; and used false representations and deceptive means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692e(10) of the FDCPA. These

violations of the FDCPA constitute violations of the RFDCPA as they have been incorporated therein by Calif. Civ. Code § 1788.17.

40. By persisting in their phone calls to Plaintiffs even after multiple efforts by Plaintiffs to have the calls cease, and Defendant's agents adamantly claiming that they can call whenever they want, Defendant violated Calif. Civ. Code § 1788.11(d)-(e) of the Rosenthal Act.

41. As a result of these violations, Plaintiffs have actual damages as described in the factual allegations above.

42. Defendant's violations above were knowing and willful because Plaintiffs repeatedly insisted that Defendant stop calling and repeatedly informed Defendant as to Plaintiff HAZEL's health issues, yet Defendant's agents expressly rejected these complaints and persisted in their harassing calls.

## SECOND CAUSE OF ACTION
### (TCPA)
### 47 U.S.C. § 227(b)

43. Plaintiffs repeat, re-allege, and incorporate by reference all other paragraphs, as if fully set forth herein.

44. Defendant violated 47 U.S.C. 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system (ATDS) and pre-recorded voice messages to call Plaintiff HAZEL at least 45 times between February and May of 2015 after Plaintiff specifically instructed Defendant's agents to stop calling by written letter, and the calls were therefore without Plaintiff's prior express consent. Since the calls were placed for

debt collection attempts the calls, the calls were not for emergency purposes.

45. Defendant violated 47 U.S.C. 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system (ATDS) and pre-recorded voice messages to call Plaintiff PATRICK at least 25 times between February and May of 2015 after Plaintiff specifically instructed Defendant's agents to stop calling by written letter, and the calls were therefore without Plaintiff's prior express consent. Since the calls were placed for debt collection attempts the calls, the calls were not for emergency purposes.

46. Upon information and belief, these violations of the TCPA were knowing and willful because Plaintiffs repeatedly informed Defendant to stop calling and repeatedly informed Defendant of Plaintiff HAZEL's health problems, yet the calls continued to persist.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant, and Plaintiffs be awarded damages from Defendant as follows:

**As to the First Cause of Action (Calif. RFDCPA):**

1. An award of actual damages for pursuant to California Civil Code section 1788.30(a), as will be proven at trial; plus

2. An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b) for willful and knowing violations, which is cumulative and in addition to all other remedies pursuant to California Civil Code § 1788.32; plus

3. An additional award of statutory damages of $1,000.00 pursuant to 15

1  U.S.C. § 1692k(a)(2)(A), as incorporated into the Rosenthal Act via Calif. Civ. Code §1788.17, which is cumulative and in addition to all other remedies pursuant to California Civil Code § 1788.32; plus

    4.    An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code section 1788.30(c).

**As to the Second Cause of Action (TCPA):**

    1.    As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

    2.    As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

    3.    Actual damages, as will be proven at trial, should such damages be greater than the calculation of each individual statutory violation as described above;

    4.    Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

DATED: 09/24/2015                                     /s/ Jared M. Hartman, Esq.
                                                        JARED M. HARTMAN, ESQ.
                                                        Attorney for Plaintiffs,

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

DATED: 09/24/2015                          /s/ Jared M. Hartman, Esq.
                                           JARED M. HARTMAN, ESQ.
                                           Attorney for Plaintiff,